HARRY A. MCLAUGHLIN, executor of the estate of William J. McLaughlin, deceased, complainant,

*v.*

HARRY A. WHALAND and HARRY LAUDERBACK, defendants.

[Decided May 28th, 1940.]

*Mr. Bryan B. McKernan,* for the complainant.

*Mr. R. Cooper Brown,* for the defendant Lauderback.

BERRY, V. C.

The bill seeks to subject certain lands, the title to which is in the defendant Lauderback, to the lien of a judgment recovered by complainant's testator against one Harry H. Whaland on September 19th, 1919, in the Camden County Circuit Court in the sum of $2,359.22. The controversy arises out of the following state of facts:

In October, 1913, William J. McLaughlin, complainant's decedent, loaned Whaland the sum of approximately $1,700, and took his promissory note therefor payable one month after date. Thereafter, in March, 1917, Whaland acquired title to the premises involved in this suit and, on July 30th, 1917, by deed recorded July 31st, 1917, he conveyed these premises, together with other lands which were encumbered by a mortgage later foreclosed, to one Henry MacNamara. This deed, while absolute on its face, was in effect a mortgage given to secure an indebtedness of approximately $700. At the time this deed was executed Whaland took back an agreement in writing which provided for a reconveyance to him or to his nominee upon payment of the indebtedness which the deed was given to secure. That agreement has apparently been lost and was not produced at the trial, but an excerpt therefrom appears of record in the office of the register of deeds of Camden county as a part of another instrument there recorded and to which reference will be hereinafter made; and there can be no doubt as to the fact of such an agreement having been made.

On September 10th, 1919, Whaland, by an instrument in writing, assigned his interest in that portion of said lands not subject to the mortgage, which had then been foreclosed, to the defendant Lauderback and directed the executrix of Henry MacNamara, who was then dead, to convey his (Whaland's) interest in said lands to Lauderback. The following is a copy of said assignment, which was recorded in the office of the register of deeds of Camden county on October 15th, 1919:

"Know all men by these presents that I, Harry H. Whaland for and in consideration of the sum of one dollar lawful money of the United States of America and for other good and valuable consideration receipt whereof is hereby acknowledged have assigned transferred and set over and by these presents do assign transfer and set over unto Charles Louderback of the borough of Collingswood in the county of Camden and State of New Jersey All my right, title and interest in and to a certain lot or piece of ground situate in the rear of premises Nos. 34 to 46 East Collings Avenue Collingswood New Jersey And I hereby nominate constitute and appoint the said Charles Louderback my nominee to whom said premises shall be conveyed under and by virtue of the terms of a certain agreement entered into between Henry Macnamara and myself bearing date July 30th 1917 the clause herein referred to reading as follows: 'Said party of the second part shall have the option to pay off said note for six hundred dollars said fee of sixty dollars and any other proper and necessary costs and charges in connection with said note at any time before any due date thereof whereupon said party of the first part shall and hereby does agree to convey to said party of the second part or his nominee said premises with title thereto in as good condition as the same now is acts on the part of the party of the second part or omissions affecting title to said premises excepted.' And I hereby direct and request the heirs and assigns of the said Henry Macnamara or his executrix to transfer and convey to the said Charles Louderback as my nominee whatever interest and title I may have to said premises under and by virtue of the terms of said agreement."

The actual consideration for this assignment was the sum of $200, paid by the defendant Lauderback to Whaland's wife, Whaland being then confined in the state prison at Trenton. Pursuant to the direction of the above-recited instrument the executrix of Henry MacNamara executed a deed of conveyance for the premises to Lauderback and that deed was recorded in the Camden county register's office on October 14th, 1919. The consideration moving from Lauderback to the MacNamara estate for that conveyance was the sum of $30, representing the balance due MacNamara from Whaland.

It is contended by complainant that since his testator's judgment antedated the conveyance from MacNamara's executrix to Lauderback, he took title to the lands thereby conveyed subject to the lien of that judgment, and this because of his knowledge that Whaland, who was Lauderback's brother-in-law, was the real owner thereof.

I should have little difficulty in disposing of this controversy except for the additional facts which I am about to

recite.  In 1927, the borough of Collingswood condemned a. portion of the lands conveyed by MacNamara's executrix to Lauderback, together with a portion of other lands owned by Lauderback, and awarded him the sum of $2,750 as damages therefor.  Because of conflicting claims to this money, it was thereafter, pursuant to a petition filed in this court on March 15th, 1927, and pursuant to an order of this court advised on March 28th, 1927, deposited with the clerk of this court to abide the court's further order.  On May 25th, 1927, the defendant Lauderback filed a petition praying for an order directing the clerk to pay said sum to him, reciting in said petition, however, that the State of New Jersey, William J. McLaughlin, Whaland's judgment creditor, and Harry H. Whaland all claimed some interest in said fund.  The matter was referred to one of the special masters of this court who reported that the deed from Whaland to MacNamara, dated July 30th, 1917, was in fact a mortgage, of which fact Lauderback had knowledge when he took the conveyance from MacNamara's executrix on October 11th, 1919, and that at the time of such conveyance, at the time of the entry of McLaughlin's judgment, and at the time of the condemnation proceedings, Whaland was the equitable owner of a portion of the lands so condemned; and that Lauderback held it as trustee for Whaland, subject to the repayment to him of the $30 which he had paid to MacNamara's executrix, and subject also to the repayment of certain other moneys which Lauderback had expended in erecting garages on the premises; and he awarded to the judgment creditor McLaughlin the sum of $769.15, representing the value of Whaland's interest in the lands so condemned.  This court subsequently directed the distribution of said sum of $2,750, in accordance with the master's report.

Execution was for the first time issued on the McLaughlin judgment on December 16th, 1938, and on December 18th, 1938, the remainder of the lands so conveyed by MacNamara's executrix to the defendant Lauderback were levied upon by the sheriff of Camden county, and thereafter, on February 24th, 1939, sold by the sheriff and purchased by the complainant for the sum of $100.  It is now conceded, however,

that by virtue of said execution and levy the McLaughlin judgment did not become a lien upon this land and that the complainant took no title thereto by the sheriff's deed executed and delivered pursuant to the sale. *Disborough* v. *Outcalt, 1 N. J. Eq. 298; Ketchum* v. *Johnson's Executors, 4 N. J. Eq. 370; Belford* v. *Crane, 16 N. J. Eq. 265; Kinmonth* v. *White, 61 N. J. Eq. 358; Williams* v. *Baker, 62 N. J. Eq. 563; Smith* v. *Collins, 81 N. J. Eq. 348.*

The lien of a judgment at law upon lands of a judgment debtor is purely statutory. *Voorhees* v. *Chaffers, 24 N. J. Law 507.* Our first statute was passed by the Colonial General Assembly in 1743 (*Nevill's Laws 279-80-81*) and its provisions respecting such lien are now embodied in *R. S. 2:26-138-139.*

This bill was filed on June 3d, 1939.

I think it is clear that under the law of this state Whaland's interest in the lands here involved after his conveyance to MacNamara was a purely equitable interest, the legal title to said lands being vested in MacNamara, and thereafter, pursuant to the deed of MacNamara's executrix, in Lauderback. *Williams* v. *Baker, Kinmonth* v. *White, supra.* In the case of an ordinary mortgage upon lands, a judgment against the mortgagor becomes, by virtue of the statute, a lien on the equity of redemption, because the legal title is still in the judgment debtor, the mortgage being deemed a mere security for a debt. *Ketchum* v. *Johnson's Executors, supra.* But where a deed absolute on its face is given as security for a debt, the legal title rests in the grantee notwithstanding that in equity the deed is but a mortgage; and there remains in the grantor an equitable estate only to which the judgment lien does not attach (*Williams* v. *Baker, supra*), except as a result of proceedings in this court, which alone has jurisdiction to declare an absolute deed to be a mortgage. *Foley* v. *Kirk, 33 N. J. Eq. 170.*

It is settled by a long line of authorities in this state that at law a judgment and execution constitute no lien upon a mere equitable interest in land. *Vancleve* v. *Groves, 4 N. J. Eq. 330; Halsted* v. *Davison, 10 N. J. Eq. 290; Trusdell* v. *Lehman, 47 N. J. Eq. 218; Sipley* v. *Wass, 49 N. J. Eq.*

*463; Williams* v. *Baker, Kinmonth* v. *White, Belford* v. *Crane, Disborough* v. *Outcalt, Ketchum* v. *Johnson's Executors* and *Smith* v. *Collins, supra.* It is true that a court of equity may aid the judgment creditor in reaching an equitable interest and secure to him a preference to which he has become entitled by his diligence. *Halsted* v. *Davison, supra; Dunham* v. *Cox, 10 N. J. Eq. 437.* But the lien of a judgment at law upon an equitable interest in land attaches only as of the date of the filing of the bill in this court. *Sitley & Son* v. *Morris, 73 N. J. Eq. 197; Kinmonth* v. *White, Williams* v. *Baker, supra.* Complainant's judgment, therefore, never became a lien upon these premises unless it has attached by virtue of these proceedings.

The first cause of action in the bill of complaint is based upon the allegation that Whaland's deed to MacNamara was in fact a mortgage, and that seems now to be conceded by all parties. However, there is a second cause of action set forth in the bill which is based upon an allegation that Whaland's deed to MacNamara, his assignment to Lauderback, and the deed from MacNamara's executrix to Lauderback were all fraudulent and made with the intent to hinder, delay and defraud Whaland's creditors, and there is a prayer that all these instruments be decreed to have been "fraudulent and void." The applicable rule touching the lien of a judgment at law upon lands fraudulently conveyed by a judgment debtor is different from that applicable to equitable estates of such debtors. A fraudulent conveyance is void as to creditors both at law and in equity. The conveyance being wholly void, it is ineffective to transfer the legal estate of the debtor in the lands conveyed and the judgment becomes a lien upon such estates by virtue of the statute (*R. S. 2:26-138, 139*), immediately upon its entry and recording (*R. S. 2:27-252*), notwithstanding the fraudulent conveyance; and a levy and sale under an execution issued on the judgment passes the title to such legal estate to a purchaser at such a sale. Priorities among judgment creditors are dependent upon the order of their levies, and not in the order in which they file their bills to set aside the fraudulent conveyance. In such cases it is, of course, necessary for the judgment debtor to have the

conveyance determined to be fraudulent by a court of competent jurisdiction in order to establish the validity of his lien or title; but this he may do by bill in equity either before or after levy, or before or after sale, or by ejectment after sale under such levy. *Kinmonth* v. *White, supra; Swift & Co.* v. *First National Bank of Hightstown, 114 N. J. Eq. 417.* And this is the law both under the Uniform Fraudulent Conveyance act and was before it. See note, *119 A. L. R. 955.* This rule touching the lien of a judgment upon lands of a debtor fraudulently conveyed is not, however, applicable here. It was conceded in open court on the trial of this cause that complainants took nothing by the sheriff's deed executed and delivered pursuant to the execution, levy and sale under complainant's judgment. This admission was, in effect, an abandonment of the second cause of action because inconsistent therewith; and the evidence failed to show any fraud intended or accomplished. The deed from Whaland to MacNamara was but a mortgage given to secure the payment of a debt the existence of which has not been challenged, but which is admitted. The assignment and the deed to Lauderback were both supported by adequate or fair consideration and were not, therefore, fraudulent. Lauderback's knowledge of Whaland's interest in the land, evidenced by his purchase thereof, did not make the conveyances fraudulent, nor convert a potential lien into an actual lien, any more than the knowledge of a debt which could be reduced to a judgment would make such judgment entered after the transfer of a legal estate by the judgment debtor binding thereon.

The sole question here presented, it seems to me, is whether or not when Lauderback acquired the legal title from MacNamara's executrix on October 11th, 1919, and the equitable title by virtue of Whaland's assignment on September 10th, 1919, he took the lands subject to the lien of McLaughlin's judgment entered on September 19th, 1919. If he did not, then this bill is ineffective to fasten the lien of said judgment on said lands now.

The legal title being in MacNamara on the date of the entry of the judgment, it did not, as already stated, then

become a lien on the land and had not become such a lien when Lauderback took title from MacNamara's executrix. The equitable title was assigned to Lauderback prior to the entry of complainant's judgment and merged in the legal title when it was conveyed on October 11th, 1919, because where a legal estate and the equitable estate unite in the same person, the equitable estate is merged in the legal and the title becomes complete. *Pedrick* v. *Guarantee Trust Co., 123 N. J. Eq. 395.*

It is argued that as the assignment from Whaland to Lauderback was not recorded until October 15th, 1919, which was subsequent to the entry of the McLaughlin judgment, the lien of that judgment attached to Lauderback's title by virtue of *R. S. 46:22-1,* but that is not so, as Whaland's interest could not have been subjected to the lien of the judgment except by proceedings in this court; *Kinmonth* v. *White, Williams* v. *Baker, supra;* and equity alone can reduce an absolute deed to a mortgage. *Foley* v. *Kirk, supra.* As already stated, the lien of a judgment upon an equitable interest in land when perfected, dates from the filing of the bill. Had the equitable title not been assigned until after the entry of the judgment, that judgment would still not have been a lien thereon unless and until proceedings to that end were brought in this court. This bill was not filed until nearly twenty years after the entry of the judgment and the conveyance of both legal and equitable estates.

The defendant further argues that the record of the assignment by Whaland to Lauderback was not notice to him of Whaland's interest in the land because recorded after the judgment was entered, and that as he had no notice of Whaland's interest he is not chargeable with delay; but the deed by which Whaland acquired title was recorded in March, 1917, more than two years before the judgment was entered and twenty-two years before this bill was filed; and as early as 1927, twelve years before the filing of the bill, complainant had complete knowledge of Whaland's interest. There was nothing to prevent complainant's testator, upon the entry of his judgment, from examining the records to learn if his debtor owned any property out of which the debt might be

made. A diligent creditor would have done so. Had this judgment creditor done so he would have found a record of the conveyance to Whaland and of the conveyance by Whaland to MacNamara, and would have thus been put on inquiry as to the nature of the transaction. In *Degrauw* v. *Mechan, 48 N. J. Eq. 219*, and in *Trusdell* v. *Lehman, supra*, a delay of twelve years in filing a bill to subject an equitable interest in lands to the lien of a judgment was held fatal and it is elementary that "equity will not assist a man whose condition is attributable to his failure to exercise that diligence which may be fairly expected from a reasonable person." *Dillett* v. *Kemble, 25 N. J. Eq. 66*. It may well be that complainant is barred from relief by laches, but it is not necessary to base this decision on that ground.

I do not consider the finding of the special master in *Borough of Collingswood* v. *Lauderback* (Docket 63, page 565), hereinabove referred to, as binding on this court in this proceeding. The transcript of the testimony before the master in that cause is not now available; in fact, I am informed that the testimony was never transcribed; but I think it is clear that in that proceeding there was no evidence that the defendant Lauderback had paid $200 in cash for Whaland's assignment, although there was evidence of the $30 payment to MacNamara's executrix, otherwise the master would not have found that Lauderback held the lands as trustee for Whaland. However, the evidence of the $200 payment which was submitted in this proceeding was conclusive. Lauderback's canceled check showing such payment was produced and offered in evidence and there was no attempt to deny that such payment was made. It therefore appears that the assignment from Whaland to Lauderback and the conveyance from MacNamara's executrix to Lauderback were not voluntary but were both founded upon a valuable consideration, and I am unable to find that thereafter Whaland had any interest whatever in said lands. He certainly never asserted any such interest, and in this proceeding disclaimed any interest, notwithstanding the strained relations between him and Lauderback. The evidence shows that when Lauderback purchased this land it was completely shut off from any high-

way and had no means of access except over the lands of others which abutted thereon. Lauderback already owned one of the abutting lots and by his purchase added that tract to his lot. The evidence also indicates that the value of the land at that time was very small, and I have no doubt but that both Whaland and Lauderback thought that its value did not materially exceed the sum of $230, the amount which Lauderback paid. The value later established in the condemnation proceedings, and the value to-day, evidently resulted from the laying out of a new street giving the property the accessibility which it theretofore lacked.

I will advise a decree dismissing the bill of complaint.